FILED

2013 Feb-15  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| TROY CLAMMON GLASS, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Case No. 6:11-cv-01178-HGD |
| | ) | |
| WARDEN WILLIE THOMAS and | ) | |
| THE ATTORNEY GENERAL | ) | |
| OF THE STATE OF ALABAMA, | ) | |
| | ) | |
| Respondents | ) | |

## **REPORT AND RECOMMENDATION**

Petitioner, Troy Clammon Glass, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges the validity of his 2006 conviction in the Circuit Court of Winston County based on a plea of guilty to a charge of first degree rape.  He is serving a sentence of 50 years as a result of his guilty plea.

Petitioner entered a guilty plea to the charge of rape in the first degree before Judge Bobby Aderholt in Winston County Circuit Court on December 6, 2005.  The entirety of the plea colloquy is as follows:

BY THE COURT:

Q.  Would you state your name for the record?

A. Troy Clammon Glass.

Q. I have in my hand a document marked Court's exhibit 1. It is headed Explanation of Rights and Plea of Guilty. And over on the back in a block above my signature is a section that's headed rights you have and waiver of your rights. And in this section are explained your constitutional rights. It says you are waiving your constitutional rights. It also states that by waiving those constitutional rights and entering a plea of guilty you would be subject to being sentenced if your plea of guilty is accepted. And right under that section is a certificate signed by your lawyer that says he has gone over all of those rights with you and he has explained to you in detail these rights and consequences of waiving those rights and pleading guilty. And under that is a statement signed by you that says this is true, that you understand your constitutional rights and knowing the consequences of waiving those rights you still wish to do so and enter a plea of guilty?

A. Yes.

Q. Do you understand that you are charged in this case with the offense of rape in the first degree, which is a Class A felony?

A. Yes, sir.

Q. And do you understand that the law provides that the punishment for this is not less than ten years and not more than life or ninety-nine years imprisonment in the state penitentiary and may also include a fine not to exceed twenty thousand dollars?

A. Yes.

Q. Do you understand that if you enter a plea of guilty and waive your constitutional rights that you will not have a trial by jury?

A. Yes.

Q. And that you will not have any kind of a hearing, there will be no proceeding of any kind conducted to determine your guilt, but your guilt will be based solely upon your plea of guilty?

A. Yes.

Q. All right.  To the charge of rape in the first degree, how do you plead?

A. Guilty.

Q. What did you do?

A. I had sex with a Veronica Sunshine Hoffman, H-O-F-F-M-A-N.

Q. How old was she at the time?

A. Three years old.

Q. How old were you at that time?

A. Eighteen.

Q. Were you then or are you now under the influence of any kind of drugs?

A. At the time I was, sir.

Q. What kind of drugs?

A.   It was pot and some Lortab and Xanax.

Q.   And let me ask you this:  Did you penetrate her private parts, that is, her vagina, with your penis?

A.   Yes.

Q.   Order and judgment of the court that you voluntarily and understandingly and intelligently waive your constitutional rights.   That you voluntarily and understandingly and intelligently enter your plea of guilty realizing the consequences of entering such a plea.  Further ordered that your plea be entered into the minutes of the court and that you are guilty of rape in the first degree.  I will postpone sentencing you until a presentence investigation is conducted and a sentence hearing will be held at that time.

(Respondents' Ex. A at 22-25).

A sentencing hearing was held on April 5, 2006.  A pre-sentence investigation report was admitted without objection.  (*Id.* at 26).  Within the pre-sentence report was a reference to the Lancaster Sexual Offender Program.  During the course of the sentencing hearing, the trial judge, Judge Aderholt, asked the probation officer about this reference and whether its presence in the report meant that the petitioner had been through the program.   The probation officer responded:   "No.   That is recommendation from the probation office for the court to take upon considering." (*Id.* at 50) (*sic*).

At the sentencing hearing, the prosecution offered two statements that petitioner gave to law enforcement.  (*Id.* at 26).  These statements were offered to rebut a statement by petitioner in his pre-sentence report claiming that he "didn't do it."  (*Id.*).  The prosecutor also offered these statements because "somewhere down the road there is probably going to be Rule 32 petitions filed."  (*Id.* at 27).

Subsequently, the State called Winston County Sheriff's Investigator Steve Rogers.  Investigator Rogers testified that he took a statement concerning the molestation of the victim from petitioner on August 4, 2004.  According to Rogers, prior to taking the statement, he read petitioner his *Miranda* rights and petitioner signed the form and indicated that he understood those rights.  (*Id.* at 28-29).  On cross-examination by counsel for petitioner, Investigator Rogers stated that, after obtaining petitioner's statement, he wrote out a statement for petitioner which petitioner signed after reading.  (*Id.* at 30).  Rogers also acknowledged that petitioner had a seventh- or eighth-grade education and that the syntax and grammar of the sentences in the statement were the result of his writing the statement, rather than petitioner actually making the statement in that manner.  (*Id.* at 30).

At this point, the trial judge stated:  "Let me say something and I want the defendant to understand this.  If he wishes to withdraw his plea of guilty, the court will grant it."  (*Id.* at 31).  The court later asked if petitioner "now denounces these

statements and renege[s] on his plea of guilty." (*Id.* at 32).  Petitioner declined to do so.  (*Id.*).

Counsel for petitioner called petitioner's adoptive mother as a witness.  She testified that petitioner was five years old when his father died.  His mother abandoned petitioner and his four siblings.  She and her husband adopted them.  Prior to adoption, petitioner and his brothers and sisters were in three separate foster homes.  (*Id.* at 33-34).

According to his adoptive mother, petitioner went to school up to the tenth grade.  He was "barely getting by" and "had to repeat a lot of grades."  He was in special education classes.  (*Id.* at 35).  During childhood, petitioner "always acted like something was bothering him."  (*Id.* at 36).  However, he would not talk about it.  He was given psychiatric therapy for about six months, until "they said everything was okay."  (*Id.*).  However, his adoptive mother stated that she believed he was sexually molested as a child.  (*Id.*).

On cross-examination, the prosecutor questioned the witness regarding whether the person who molested petitioner and other family members might have been her husband.  The witness denied this, though she admitted that at least one other family member made such a claim.  (*Id.* at 38-39).  The witness asserted that petitioner and

his siblings were molested by his biological parents.  She claims this was documented by the Alabama Department of Human Resources (DHR).  (*Id.* at 39-41).

Petitioner also testified at his sentencing hearing.  He repeated his adoptive mother's testimony that his father died and his mother abandoned him and his brothers and sisters when he was five years old.  (*Id.* at 44).  His attorney questioned him also about the two statements he gave to police investigators.

> Q.  Now you freely and voluntarily signed the statements that have been introduced into evidence and you have had a chance to look at these, haven't you?
>
> A.  I think.
>
> Q.  You are not denying that the statements contained in these pieces of paper that have been signed by you, you are not denying those are substantially true; is that correct?
>
> A.  Yes, sir.
>
> Q.  You have admitted to this court you are guilty?
>
> A.  Yes.
>
> Q.  Do you understand, Troy, that what you are accused of rape of your cousin Sunshine is wrong?
>
> A.  Yes, sir.
>
> Q.  And you are accused and have pled guilty to that offense?
>
> A.  Yes, sir.

Q.  And you also understand that you have been accused and pled guilty to sodomy of Sunshine also?

A.  I was not aware that I signed a plea bargain of sodomy.

Defense Counsel:  He did not understand and perhaps he pled guilty to rape is the only charge he pled guilty to.

The Court:  Right.

Q.  What was his answer?

Defense Counsel:  He said that he did not remember pleading guilty to sodomy.

I believe he is correct and that is correct.  Now, the court today will pass judgment on you and has already accepted your plea of guilty and you have admitted what you have done and you know that is wrong; is that correct?

A.  Yes.

(*Id.* at 46-48).

Later, the trial court questioned petitioner as follows:

THE COURT:  There is one other question:  You said you now understood that what you did was wrong.  By that do you mean you didn't know that was wrong at the time you did it?

THE DEFENDANT:  I did, but now I know the severity of it, the consequences.

THE COURT:  Well, what did you think what made you think it wasn't severe?

THE DEFENDANT:  Well, at the time I was just eighteen and I didn't think anything could ever happen to me and all of that.

THE COURT:  I was once eighteen years old, believe it or not, but when I was eighteen years old I knew better than that and I think every eighteen year old today knows that that's severe.  Not too long ago it was a death penalty offense.

(*Id.* at 51-52).

In pronouncing sentence, the trial court stated as follows:

THE COURT:  Mr. Glass, this is one of the most difficult sentencings that I have ever had to do in some thirty years of sentencing people.  It is never a pleasant thing to do.  Sometimes it is more difficult than others and this is one of those times.  You look like and would pass for an Eagle Scout, an honor student in school, even a college student.  But looks are deceiving and you have pled guilty to one of the most heinous offenses that anyone can imagine.  There is a part of me that wants to show mercy and leniency toward you, but there is another part of me that is not focused on Troy Glass and how he looks and what he might have or could have been, but there is a part of me that's thinking about that little three year old girl that "cried and begged you to stop raping her" as you put in your own words.  And that part of me also thinks about what is going to happen to her in the future as she recalls those horrible events that you subjected her to, not just in the offense that you pled guilty to but also the horrible things that you admitted to in your statement given to the police officers.  I also think about the other little girls and what might happen to them if you were loose in society.

> It is therefore the order and judgment of this court that you be sentenced to the penitentiary of the State of Alabama for fifty years.
>
> Done this 5th day of April 2006.

(*Id.* at 53-54).  Petitioner was not advised by the court concerning any right he might have to appeal this sentence.

The case action summary sheet reflects that on May 25, 2006, petitioner sent a letter to the court requesting to appeal his sentence.  It was filed in as a notice of appeal.  (*Id.* at 3).[1]  The appeal was dismissed by the Alabama Court of Criminal Appeals on June 6, 2006, as untimely filed.  (Respondents' Ex. B).  A certificate of judgment was issued the same day.  (Respondents' Ex. C).

On September 12, 2006, petitioner filed a petition for post-conviction relief pursuant to Rule 32, Ala.R.Crim.P., in Winston County Circuit Court.  (Respondents' Ex. A at 4-10).  In his petition, Glass asserted the following claims:

1.  Petitioner's conviction was obtained by a plea of guilty which was involuntarily induced and involuntary due to the fact that his attorney advised him to plead guilty to rape in the first degree in return for a sentence of 15 years split with three years to serve.

2.  The trial court failed to carry out the agreed upon sentence.

3.  Trial counsel did not sufficiently investigate his case.

---

[1]  As is noted below, petitioner has provided a copy of this letter, which is dated May 12, 2006.  This date is six days before the time to file a notice of appeal expired.

    4.   The trial court erroneously accepted his plea without sufficient evidence to establish that there was a factual basis for the plea.

(*Id.* at 6-8).

Although not listed under the section of his petition labeled "GROUND OF PETITION," earlier in the body of his petition he also states that "he informed his attorney that he wanted an appeal in a timely manner with the primary issue being ineffective assistance of counsel." (*Id.* at 5).

The State of Alabama filed a response to the petition in which it asserted the following:

    1.   The claims raised by petitioner were precluded as they could have been raised at trial or on appeal.

    2.   The claims by petitioner were meritless and petitioner failed to use the proper form to file his petition.

    3.   The petition failed to state a claim for which relief could be granted under the provisions of Rule 32.

(*Id.* at 14-18).

Specifically, the State pointed out that, in his petition, petitioner incorrectly states that he "informed his attorney and the Court at the time his plea was entered he was in fact not guilty of the offense of Rape in the 1st degree." However, the official transcript of petitioner's plea reflects that he never made such a statement. The State noted that the transcript reflects that, after being informed of his constitutional rights

and the consequences of waiving those rights, he was asked if he still wished to enter a plea of guilty, to which he responded, "Yes." When asked how he pled to the charge of rape in the first degree, the petitioner answered, "Guilty." The State further pointed out that the transcript reflects that, when asked what he did, he stated: "I had sex with Veronica Sunshine Smith," who, he explained, was three years of age. (*Id.* at 14-15).

The State further responded that the transcript of petitioner's sentencing reflects that he did not deny the truth of the confession that he had given to law enforcement officers during the investigation. When asked by his attorney if there was anything he wished to tell the court before he was sentenced, petitioner responded that he was sorry for what he had done, that he knew it was wrong, and that he apologized to the victim and her parents. (*Id.* at 15).

The State of Alabama also denied petitioner's claim that there was an express agreement between petitioner and the State of Alabama as to the sentence he would receive, asserting that there is no plea agreement in the record because none ever existed. According to the State, the Court was well aware that petitioner's plea was a "blind plea." There was no mention of a plea agreement in the transcript because no such agreement existed. Furthermore, according to the State, prior to the plea proceedings, the trial court rejected a 20-year offer that the State had made to the

petitioner.   According to the State of Alabama, "[a]fter no agreement could be reached by the State and the Petitioner, the Court informed the Petitioner's attorney that the Petitioner would have to enter a "blind plea" if he chose to plead.  (*Id.* at 15-16).

The State of Alabama asserted also that petitioner failed to demonstrate that counsel was ineffective because the evidence of petitioner's guilt was overwhelming, including his confession to the rape of the three-year-old victim and his admissions of guilt at his plea and sentencing hearings.  (*Id.* at 16).

In his response to the State's objections to his Rule 32 petition, petitioner again stated that he informed the court and his attorney that he wished to file an appeal in a timely manner.  (*Id.* at 57, 61).  With regard to this claim, he stated as follows:

> 2.  Glass informed the Court and his attorney that he wanted an appeal in a timely manner, with the primary issue being ineffective assistance of counsel.  Although Glass was never informed of his right to appeal his conviction and sentence, his failure to appeal his conviction and sentence was without fault on his part.

(*Id.* at 57).

> 15.  Troy Glass alleged in his petition that he requested a direct appeal of his conviction and sentence in a timely manner, and [was] denied his right to appeal.

(*Id.* at 61).

With regard to the sentence he actually received, he states as follows:

> 4. There was an express and implied agreement between Troy Glass and the State of Alabama as to the sentence Glass would receive in exchange for his plea of guilty in this cause. To wit: "a 20-year sentence." (See Paragraph #4 of State's Response) and treatment at the Lancaster Sexual Offender Program. (See Sentencing Transcript at page #32).

(*Id.* at 58).

He reiterated this claim further within his response, stating that he pled guilty to the rape charge in exchange for a 20-year sentence (rather than the 15/3 split he claimed in his initial petition) with treatment in a sex offender program. (*Id.* at 58-59). Glass further asserted had he known the trial court would not accept the plea agreement and sentence of 20 years, he would have gone to trial. (*Id.* at 59). He further asserted that trial counsel was aware of petitioner's IQ of 56 and that he could not read well. (*Id.*). Thus, he asserts that he was misled by affirmative misrepresentations by his trial counsel and coerced into entering a guilty plea.

In addition, Glass claimed that he did not know his actions with the victim were illegal because he was sexually assaulted the same way during his childhood by his father, which were actions for which his father was never arrested. (*Id.* at 60). Petitioner also reiterated his claim that his attorney failed to investigate defenses and familiarize himself with the facts and the law and that his actions with regard to petitioner's entry of a plea of guilty amounted to ineffective assistance of counsel. (*Id.* at 61-62).

Three years after Glass filed his Rule 32 petition, a different judge than the one who took petitioner's plea and sentenced him, Judge Lee Carter, entered a short order denying all relief. (*Id.* at 73-74). That order stated as follows:

> This court, having reviewed Petition for Post-Conviction relief filed pursuant to Rule 32, Ala.R.Crim.P., and the State's Answer, hereby finds as follows:
>
> 1. The Petitioner entered a blind guilty plea for rape 1st on December 6, 2005. The Court asked the Petitioner if he understood that by entering a guilty plea he gave up certain constitutional rights and the Petitioner responded that he understood. The Petitioner stated on the record that his attorney had explained this to him and that he desired to plea guilty. The possible punishment for the crime of rape 1st was explained to Petitioner. Petitioner stated in explicit and detailed terms on the record and in two other statements that he was guilty of rapeing (*sic*) a three year old child. This Court finds after review of the record that the Petitioner voluntarily, understandingly and intelligently waived his constitutional rights. This Court also finds that the Petitioner understood the possible punishment he would receive if desired to plea guilty.
>
> 2. On April 5, 2006, Petitioner was sentenced for the crime of rape in the first degree which he had pled to on December 6, 2005, some four months earlier. At the hearing the Petitioner was asked if it was still his desire to stand by his plea of guilty to the charge of rape in the first degree and he responded in the affirmative. After review of the record made on April 5, 2006 this Court finds that the Petitioner did voluntarily, intelligently and understandingly enter his plea of guilty. Finally, the Petitioner has only made claim that he is innocent of the crime with which he pled guilty after he received a fifty year sentence.
>
> 3. The Petitioner's claim that his plea was involuntary is without merit and due to be denied.

4.  The Petitioner avers that his counsel was ineffective.  The record is devoid of any evidence which would support this allegation and to the contrary the record is replete with evidence that his counsel conducted discovery, legal research, and frequently consulted with his client and the assistant District Attorney.  There is no evidence that the plea was entered with an agreed upon limitation of confinement.

Upon consideration thereof, and having taken judicial notice of the Court's own records, this Court finds that no material issue of law or fact exists that would entitle the Petitioner to relief under Rule 32, and that no purpose would be served by any further proceedings.  Rule 32.7, Ala.R.Crim.P.  IT IS HEREBY **ORDERED, ADJUDGED AND DECREED** that the Petition is hereby **DENIED** without an evidentiary hearing.

Done this 2 day of September, 2009.

(*Id.* at 73-74).

Petitioner appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals.   On March 10, 2010, that court issued an unpublished memorandum opinion denying relief.  (Respondents' Ex. D).  On appeal, Glass asserted that the circuit court abused its discretion by failing to conduct an evidentiary hearing because his claims were meritorious.  In particular, he referred to his claims that his counsel was ineffective for failing to properly inform him that he might not receive the sentence that he believed he would receive upon pleading guilty.  (*Id.* at 3).  He also claimed that he was denied his right to appeal because he was never advised of this right.  He argued that he attempted to file an appeal in order to raise

the issues concerning involuntary guilty plea and ineffectiveness of counsel concerning his sentencing. (*Id.*).

The Alabama Court of Criminal Appeals concluded that the circuit court did not abuse its discretion in summarily denying Glass's Rule 32 petition. According to that court, the guilty plea colloquy reflected that the trial court informed Glass that he could be sentenced to "not less than ten years and not more than life or ninety-nine years imprisonment in the state's penitentiary. . . ." (*Id.*). It noted that Glass then informed the court that he was eighteen years old when he penetrated the three-year-old victim, as a factual basis, and pled guilty to first degree rape. The appellate court further noted that, at his sentencing hearing, the State introduced two statements by Glass admitting the rape. The trial court also asked Glass if he wished to withdraw his guilty plea, and he declined to do so. (*Id.*).

The appellate court further stated as follows:

> There is no indication in the record that there was a plea agreement nor is there any indication that Glass's plea was unknowing, involuntary or based on facts in dispute. *Cf. Youngblood v. State,* [Ms. CR-08-0846, August 7, 2009] ___ So. 3d ___ (Ala.Crim.App. 2009). In fact, in its order, the trial court states that Glass entered a blind guilty plea. Moreover, Glass has failed to meet the burden of showing ineffectiveness by his counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that his counsel's representation was deficient and that any deficiency by his counsel would have affected the outcome of his trial. Because the record contains no indication of

any plea agreement, there is no deficiency by defense counsel as to Glass's sentencing. Moreover, in its order summarily denying the petition, the trial court stated that defense counsel "conducted discovery, research, and frequently consulted with his client and the assistant District Attorney." (R. 74.)

The record contains the plea colloquy which met the requisites of *Boykin v. Alabama*, 395 U.S. 238 (1969). Glass was fully informed of the nature and consequences of his plea.

As to his claim that he failed to appeal through no fault of his own, Glass filed notice of appeal although it was dismissed as untimely by this Court. *See Cunningham v. State,* 611 So.2d 510, 511 (Ala.Crim.App. 1992) ("Every criminal defendant has a right to appeal his conviction to this Court. If the filing of a direct appeal to this Court is not timely filed and that untimeliness is the fault of counsel, then counsel's performance has been ineffective."). He submits that he wanted to raise the same claims on appeal concerning his sentence and his counsel's ineffectiveness for failing to adequately inform him of the nature of his plea. Although the trial court failed to make findings as to Glass's failure to timely appeal, Glass had the opportunity to have his claims addressed on the merits by the trial court in ruling on his Rule 32 petition, and we have reviewed these same issues. *See Young v. State*, 887 So.2d 320, 322 (Ala.Crim.App. 2004) (despite Young's claim that his ineffectiveness claims raised in his untimely hearing on his post-trial motion were preserved for appeal, the record indicated that he had the opportunity to present the specific allegations of ineffectiveness at the hearing). Moreover, there is no indication in the record that Glass ever filed a motion to withdraw his guilty plea; therefore, his claims could not be reviewed on direct appeal. *See Wright v. State*, 845 So.2d 836, 841 (Ala.Crim.App. 2001) (record reflected that the failure to timely appeal was not

Wright's fault; "however, because the record reflects that Wright did not file a motion to withdraw his guilty plea (the failure to do so is, in fact, the basis of one of Wright's claims of ineffective assistance of counsel) or any other posttrial motions, the claims in Wright's petition that his guilty plea was involuntary and that his counsel was ineffective could not be reviewed on direct appeal. Yet those claims are properly before the court in his Rule 32 petition . . . .").

Therefore, a remand to address whether the untimely filing of Glass's notice of appeal was through no fault of his own would be a waste of judicial efficiency, because the issues that Glass seeks to have resolved could not be addressed on appeal. However, these claims were properly raised and resolved through his Rule 32 petition. Because Glass's claims that his guilty plea was involuntary and unknowing based on his sentence, and that his counsel was ineffective based on his sentence, were without merit, the trial court properly summarily dismissed this Rule 32 petition. Rule 32.7(d), Ala.R.Crim.P.

(*Id.* at 4-6) (footnote omitted).

On April 2, 2010, the Alabama Court of Criminal Appeals overruled Glass' application for rehearing. (Respondents' Ex. E). On October 8, 2010, the Alabama Supreme Court denied Glass' petition for a writ of certiorari and a certificate of judgment was issued. (Respondents' Ex. F).

On or about April 4, 2011, petitioner filed the current application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1, Petition). In this petition, he states the following grounds:

1. The trial court failed to inform petitioner of his right to appeal.

2. Petitioner's guilty plea was unlawfully induced or not made voluntarily with an understanding of the nature of the charges and the consequences of the plea due to the fact that his attorney advised him  he would receive a 15 year/3 year split sentence if he pled guilty.

3. Petitioner was denied effective assistance of counsel when he received a 50-year sentence after counsel advised him to plead guilty with the promise of a 15/3 split sentence, and for failing to investigate the circumstances surrounding his case, be familiar with the law and facts, investigate any defenses available to petitioner and explore all avenues available to his case and/or facts related to his guilt or innocence.

4. The trial court erred in accepting his guilty plea without supporting facts and evidence to support the plea.

5. The trial court abused its discretion by its denial of the petitioner's Rule 32 petition without requiring the State to respond and without personal knowledge of the facts and circumstances.

6. The trial court erred in dismissing the petitioner's Rule 32 petition without an evidentiary hearing because the judge who decided his Rule 32 petition was not the judge who took his guilty plea and pronounced his sentence.

(Doc. 1, Petition, at 6-7).[2]

**<u>Failure to Advise Petitioner of Right to Appeal</u>**

In response to this claim, respondents assert that this claim was addressed on its merits by the Alabama Court of Criminal Appeals in the Rule 32 proceeding.  As

---

[2]   Respondents concede that this petition is timely filed.  *See* Doc. 10, Answer of Respondents, at ¶ 13).

a result, they assert relief is available only if that court's review "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(1) & (2).

Respondents assert that the Alabama Court of Criminal Appeals found that petitioner's plea of guilty comported with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Petitioner provided a copy of the Explanation of Rights and Plea of Guilty form that was referenced by Judge Aderholt during petitioner's guilty plea proceeding. In conformance with *Boykin*, this form states the rights that petitioner had and would be giving up in the event of a plea. On the back page of the form, in bold letters, it states:

> **If you plead guilty, there will be no trial. You will be waiving the rights outlined above, except your rights relating to representation by an attorney. The state will have nothing to prove and you will stand guilty on your guilty plea. By entering a plea of guilty, you will also waive your right to appeal, unless (1) you have, before entering the plea of guilty, expressly reserved the right to appeal with respect to a particular issue or issues, in which event appellate review shall be limited to a determination of the issue or issues reserved, or (2) you have timely filed a motion to correct a manifest injustice, and the court has denied your motion to**

**withdraw your plea, or the motion has been deemed denied by operation of law.**

**If you have a right to appeal under one of the conditions above and you are determined by the court to be indigent, counsel will be appointed to represent you on appeal if you so desire and if the appeal is from a circuit court judgment or sentence, a copy of the record and the reporter's transcript will be provided at no cost to you.**

**If you have any questions about your rights or the consequences of pleading guilty, please let the court know now and further explanation will be made.**

(*Id.* at 21).

That document further states, under a section titled "Defendant's Statement of

Waiver of Rights and Plea of Guilty," the following:

I certify to the court that my attorney has read and explained the matters set forth above; that my rights have been discussed with me in detail and fully explained; that I understand the charge or charges against me; that I understand my rights, the punishment or punishments provided by law as they may apply to my case, and I understand the consequences of pleading guilty; that I am not under the influence of any drugs, medicines, or alcoholic beverages; and I have not been threatened or abused or offered any inducement, reward, or hope of reward to plead guilty other than the terms of the plea agreement which will be stated on the record.

I further state to the court that I am guilty of the charge to which I am entering a plea of guilty, that I desire to plead guilty, that I made up my own mind to plead guilty, and that I knowingly, intelligently, and voluntarily waive my

> right to a trial in this case.  I further state to the court that
> I am satisfied with my attorney's services and his/her
> handling of my case.

(*Id.*).  Immediately after this paragraph is a line containing the date of 12/5/05 and the

signature of Troy Clammon Glass.  (*Id.*).

Furthermore, according to respondents, the appellate court held that it was not

necessary to remand petitioner's case to the trial court to determine whether his

appeal was untimely filed through no fault of his own because the issues he sought

to resolve were not addressable on direct appeal, but were properly raised and

addressed in the Rule 32 proceedings.  (Doc. 10, Answer of Respondents, at 8).

Therefore, they state Glass cannot show that the state court's adjudication of this

claim resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established law as set out by the Supreme Court, nor can he

show that the decision of the Court of Criminal Appeals regarding this claim resulted

in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented at trial and on the appeal of his Rule 32 proceedings.

In response, petitioner states that he entered his plea of guilty on April 6, 2005,

and was sent to Kilby Corrections Center to begin service of his sentence.  He states

that he was not told by the court that he could or could not appeal his sentence.

(Doc. 13, Objections to Answer of Respondent, at 4).  He further states that, upon

arrival at Kilby, a "law clerk" told him he needed to write a letter to the Circuit Court clerk and the Alabama Court of Criminal Appeals to advise them that he wanted to appeal his conviction and sentence and that he wished to have court-appointed counsel. (*Id.*).

Petitioner states that he wrote letters as directed and included as an exhibit a copy of the letter which he mailed to the Alabama Court of Criminal Appeal. (Doc. 10 at Ex. A, Letter to Judge McMillan). That letter is dated May 12, 2006. It is noted that, because petitioner's plea occurred on April 6, 2006, the 42-day period in which he could file a timely notice of appeal did not expire until June 18, 2006, six days after the date of the letter.

As noted above, the court docket sheet reflects that the Circuit Clerk received a letter from petitioner which was construed as a notice of appeal and which was filed into the record on May 25, 2006, seven days after the time for filing an appeal had expired.

Petitioner also points out that, at the time petitioner entered his plea of guilty, Rule 14.4(a), Ala.R.Crim.P., provided, in pertinent part:

> [T]he court shall not accept a plea of guilty without first *addressing the defendant personally in the presence of counsel in open court* for the purpose of:
>
> (1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by

> informing the defendant of and determining that the
> defendant understands:
>
> * * *
>
> (viii)  The fact that there is no right to appeal unless the
> defendant has, before entering the plea of guilty, expressly
> reserved the right to appeal with respect to a particular
> issue or issues, in which event appellate review shall be
> limited to a determination of the issue or issues so reserved
> . . .

Ala.R.Crim.P. 14.4(a)(1)(viii).  (emphasis added).

He also notes that, in his Rule 32 petition, he used a form provided for this purpose and checked the box next to the ground which stated "The petitioner failed to appeal within the prescribed time and that failure was without fault on Petitioner's part."  (Doc. 10, Objections to the Answer of Respondent, at 12).

The record of the plea colloquy reflects that the judge taking petitioner's plea never personally addressed petitioner to inform him of his right to appeal or of the rights to appeal he was giving up by pleading guilty, as required by the Alabama Rules of Criminal Procedure.  However, an explanation of this was contained in the waiver of rights form petitioner signed.

Glass states also that there was no mention during the colloquy that he was entering a blind plea as asserted by the Rule 32 court.  He notes that there is no rule requiring plea agreements to be in written format and re-asserts that he was told by counsel that, if he pled guilty, he would receive a split sentence.  (*Id.* at 15).

According to Glass, "if the allegations are true that Glass was not told by anyone that he could or could not appeal his conviction and/or sentence[,] [t]hen Glass should at least be granted an out-of-time appeal[,] [a]nd be appointed a lawyer that will assist him." (*Id.* at 18).

## DISCUSSION

Pleadings submitted by a *pro se* plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*). Nevertheless, a court is under no duty to "re-write" a plaintiff's complaint to find a claim. *Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 912 (11th Cir. 1993). However, a liberal reading of petitioner's Rule 32 petition reflects that he claimed that (1) he was never informed of his right to appeal by anyone, attorney or court, and (2) he timely requested an appeal, but it was denied.

The trial court did not speak to these issues in its ruling on Glass' petition. The Alabama Court of Criminal Appeals noted this omission, but held that because the issues petitioner wanted to raise on direct appeal, such as the voluntariness of his plea, were not, in fact, raisable on direct appeal, but only by collateral review, and because they were addressed in the Rule 32 proceedings, then there was no need to determine if the failure to appeal was through no fault of petitioner.

In his current habeas petition, although petitioner's stated ground for relief regarding his appeal is that the trial judge failed to advise him of his right to appeal, a reading of the petition and his response to respondents' answer make it clear that he is objecting to the failure of anyone, trial court or counsel, to notify him of his right to appeal.  He is also claiming that he timely filed a notice of appeal that was denied as untimely.

It is also clear from the record that the trial court failed to personally address petitioner and advise him of the limits to his right to appeal upon entering a guilty plea under Alabama law.  It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all.  *See, e.g.,* *McKane v. Durston*, 153 U.S. 684, 687-88, 14 S.Ct. 913, 914-15, 38 L.Ed. 867 (1894); *Joensen v. Wainwright*, 615 F.2d 1077, 1078-79 (5th Cir. 1980).  Thus, the failure of the trial court to advise petitioner of his rights regarding appeal is not, in and of itself, constitutional error.  However, petitioner also claims that he advised counsel that he wished to appeal.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made

> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.    This
> requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable.

466 U.S. at 687, 104 S.Ct. at 2064.

Petitioner contends that he advised his attorney that he wished to appeal.
However, he also alleges that he was not told by counsel that "he could or could not
appeal" his sentence.  Thus, it is unclear exactly when petitioner may have told
counsel that he wanted to appeal.  Nonetheless, he made the specific claim in his
Rule 32 petition that he, at some point, "inform[ed] his attorney that he wanted an
appeal in a timely manner." (Respondents' Ex. A at 5).  Furthermore, even assuming
that petitioner did not tell trial counsel that he wished to appeal, Supreme Court
precedent holds that, in certain circumstances, counsel has a duty to make an inquiry
regarding whether a defendant wishes to appeal.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985
(2000), the Supreme Court held that *Strickland* provides the proper framework for
evaluating petitioner's claim.  With respect to the performance prong of *Strickland*,
the Court observed that it has been "long held that a lawyer who disregards specific
instructions from the defendant to file a notice of appeal acts in a manner that is

professionally unreasonable." *Id.* at 477, 120 S.Ct. at 1035.  The Court explained that this is so because counsel's failure to file a notice of appeal cannot be considered a strategic decision:  "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.*  Moreover, a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to do so. *Id.*

In addition, while the Constitution does not require that counsel consult with the defendant in every case regarding whether an appeal is desired, counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *Flores-Ortega*, 528 U.S. at 479-80, 120 S.Ct. at 1036.  Certainly, it is reasonable that a defendant of limited intelligence who received a sentence of 50 years after believing he had been assured he would receive a much lesser sentence might want to appeal.

Respondents argue that this issue has no merit because any claims petitioner could have raised could not have been asserted on direct appeal and, thus, he suffered

no prejudice.  With respect to the prejudice prong of the *Strickland* test, the Court in *Flores-Ortega* stated that whether a defendant is required to show actual prejudice or whether prejudice is presumed "turns on the magnitude of the deprivation of the right to effective assistance of counsel." *Flores-Ortega*, 528 U.S. at 482, 120 S.Ct. at 1037.   Where a defendant alleges that during a critical stage of a judicial proceeding he was denied the assistance of counsel altogether, "'[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.'"  *Id.* at 483, 120 S.Ct. at 1038, quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).   In *Flores-Ortega*, the Court explained that defense counsel's "alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself."  *Id.* at 483, 120 S.Ct. at 1038.  In other words, the "deficiency deprived [defendant] of the appellate proceeding altogether." *Id*.  This, the Court held, "demands a presumption of prejudice."  *Id*.

Indeed, in *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), the Supreme Court held, with regard to a federal defendant, that "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."  *Id.* at 329-30, 89 S.Ct. at 1717.  Although *Rodriquez* involved a plea in federal court, other courts have held

that *Rodriquez* is applicable to state prisoners seeking the reinstatement of an appeal

through habeas corpus relief. *See, e.g., United States ex rel. Randazzo v. Follette*, 444

F.2d 625, 628 (2d Cir. 1971); *Trowell v. State*, 706 So.2d 332, 335 (Fla.Dist.Ct.App.

1998) (a statement of meritorious issues is irrelevant to one's entitlement to appeal).

In an unpublished opinion, the Eleventh Circuit stated:

> [T]he merits of [] an appeal are not relevant to the question
> of whether it was constitutionally deficient for petitioner to
> be denied an appeal following an explicit request to
> counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 485, 120
> S.Ct. 1029, 145 L.Ed.2d 985 (2000); *see also Rodriguez v.
> United States*, 395 U.S. 327, 329-330, 89 S.Ct. 1715, 23
> L.Ed.2d 340 (1969) (holding that because appeals from a
> district court's judgment of conviction in a criminal case
> are effectively a matter of right, a habeas petitioner whose
> rights were violated at some earlier stage of proceedings
> should not have to surmount the additional hurdle of
> proving the existence of meritorious grounds for appeal).
> We further note that petitioner's limited appeal waiver does
> not affect this standard, and *it would be inappropriate to
> require petitioner to prove the existence of non-frivolous
> grounds for appeal* at this stage. *Gomez-Diaz v. United
> States*, 433 F.3d 788, 793-94 (11th Cir. 2005).

*King v. United States*, 250 Fed.Appx. 930, 933 at n.2, 2007 WL 2948587, at *2 n.2

(11th Cir. Oct. 11, 2007) (emphasis added). Consequently, the merits of petitioner's

appeal are irrelevant to whether he is entitled to an out-of-time appeal.

In addition, petitioner claims that he timely filed his own notice of appeal.

According to petitioner, he wrote a letter to the Circuit Clerk and the Alabama Court

of Criminal Appeals six days before the expiration of time for filing an appeal, stating that he wished to appeal and requesting appointment of counsel. Although the Circuit Clerk's record reflects that this notice was filed in on May 25, 2006, after someone in the Clerk's office consulted with someone at the Court of Criminal Appeals about what to do with the letter, there is no record of when the letter requesting an appeal was actually received.

In *Archie v. State*, 6 So.3d 566 (Ala.Crim.App. 2008), the Alabama Court of Criminal Appeals held:

> Archie alleged in his Rule 32 petition that he timely placed his notice of appeal in the prison mail system on March 15, 2007, and that the circuit court clerk erroneously stamped his notice of appeal as filed March 29, 2007, rather than giving him the benefit of the "mailbox rule." *See* Rule 4(c), Ala.R.App.P. FN4 Archie's allegations were not refuted by the State, and thus must be taken as true. "When the State does not respond to a petitioner's allegations, the unrefuted statement of facts must be taken as true." *Smith v. State*, 581 So.2d 1283, 1284 (Ala.Crim.App. 1991).

> FN4. Rule 4(c), Ala.R.App.P., states:
> "If an inmate confined in an institution and proceeding *pro se* files a notice of appeal in either a civil or a criminal case, the notice will be considered timely filed if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for 'legal' mail to be processed by the United States Post Office, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a notarized statement that

> sets forth the date the filing was deposited in the institution's mail system."
>
> Therefore, we must remand this case for the circuit court to allow Archie an opportunity to present evidence to support his allegation that the failure to appeal was based on a clerical error and was not his fault.

*Id.* at 567.  It is noted that Rule 4(c), Ala.R.App.P., was added and became effective on September 1, 2000.

Thus, under Alabama's Rules of Criminal Procedure, Glass' petition may have been timely filed.  He has alleged as much and is entitled to have this issue determined.  Once again, the merits of his appeal are irrelevant to whether his right to appeal was improperly abridged.

Consequently, the decision of the Alabama Court of Criminal Appeals constituted an unreasonable application of *Strickland* and *Flores-Ortega*.  *See* 28 U.S.C. § 2254(d)(1).  The state court denied habeas relief without considering whether counsel for petitioner had been advised in a timely manner by petitioner to file an appeal.  Furthermore, it failed to determine if he had timely filed an appeal that was incorrectly rejected as untimely filed.

## Involuntary Guilty Plea

Petitioner alleges that his guilty plea was unlawfully induced or not made voluntarily with an understanding of the nature of the charges and the consequences

of the plea due to the fact that his attorney advised him he would receive a 15 year/3 year split sentence if he pled guilty.  Both the trial court and the Alabama Court of Criminal Appeals rejected this claim.

The Circuit Court, in ruling on petitioner's Rule 32 petition, stated in conclusory fashion that petitioner entered a blind plea to the charge of rape in the first degree.  This conclusion is of questionable validity given that the judge who ruled on petitioner's Rule 32 petition was not the same judge who took the plea or imposed sentence.  The only possible basis for this conclusion is a statement in the State's Answer wherein it is alleged that the trial court rejected a 20-year plea offer and advised that it would only accept a blind plea.  However, this is also a statement without authority to back it up.  There is no affidavit from the prosecutor and, because the judge who denied the Rule 32 petition was not the same as the one who took petitioner's guilty plea, it cannot be based on the personal knowledge of the judge who rejected this claim.  Furthermore, even assuming this to be true, it does not rebut petitioner's claim that his attorney induced him to plead guilty by telling him he would receive a split sentence, even if the State had not made such an offer.

It is true that at no time during the plea colloquy was there mention made of a plea agreement.  Likewise, petitioner was advised of the minimum and maximum possible sentences he could receive.  However, petitioner is also a person of clearly

limited intelligence.  His understanding of the plea process was undoubtedly elementary at best.  The plea colloquy was brief and only just barely sufficient to pass muster under *Boykin, supra.*  Furthermore, his claims of being misled by his attorney are not directly refuted by the colloquy.  *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (allegation of unkept promise of a lighter sentence, not patently false or frivolous, is sufficient to support petition for habeas corpus); *Fontaine v. United States*, 411 U.S. 213, 214-15, 93 S.Ct. 1461, 1462-63, 36 L.Ed.2d 169 (1973) (charge of coerced plea, supported by factual allegation, will support a § 2255 motion).

Thus, when the Alabama Court of Criminal Appeals denied this claim on the basis that the Circuit Court stated that the plea was a blind plea, there was never any evidence in the record to support this conclusion and it is directly refuted by petitioner.  This conclusion resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).  Consequently, petitioner is entitled to have a determination of the merits of this issue.

**Guilty Plea Taken Without Factual Basis**

Petitioner claims that his guilty plea was taken without supporting facts or evidence.  A review of the plea colloquy reflects that petitioner admitted that he had

sex with a three-year-old child when he was 18 years of age. Consequently, the plea had a sufficient basis in fact. Likewise, at his sentencing, the court heard evidence that petitioner made two statements admitting that he committed this act. This claim is clearly without merit.

**Failure to Require State to Respond or Hold Evidentiary Hearing**

These two claims are also due to be denied as moot. Based on the court's findings with regard to his first two claims, a hearing will be held on those issues. Therefore, these claims are moot.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that a hearing be held before the undersigned magistrate judge regarding the issues outlined above which require an evidentiary hearing before it can be determined whether petitioner is entitled to relief, after which a supplemental report and recommendation will be entered. At that hearing, to be set by separate order, the issues to be determined are: (1) whether petitioner timely advised his counsel to file a notice of appeal; (2) if not, then whether the facts and circumstances of his plea and sentencing were such that counsel's failure to consult with petitioner about an appeal was ineffective assistance; (3) whether petitioner filed a timely notice of appeal *pro se*; and (4) whether

petitioner was made any promises by either the State or his own attorney reflecting the existence of an agreement to impose a particular sentence.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations

made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 15th day of February, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE